AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)  ☐ Original  ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

FILED
CLERK, U.S. DISTRICT COURT
April 26, 2022
CENTRAL DISTRICT OF CALIFORNIA
BY: VM  DEPUTY

LODGED
CLERK, U.S. DISTRICT COURT
4/26/2022
CENTRAL DISTRICT OF CALIFORNIA
BY: VAM  DEPUTY

United States of America

v.

NATHANIEL WILLARD,

Defendant

Case No. 2:22-mj-01641-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about the date(s) of February 13, 2022, in the Special Maritime Jurisdiction of the United States and the County of Los Angeles in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 113(a)(7), 113(b)(1)(A)<br>18 U.S.C. § 7(8) | Assault Resulting in Substantial Bodily Injury to an Intimate or Dating Partner within Maritime and Territorial Jurisdiction. |

This criminal complaint is based on these facts:

Please see attached affidavit.

☒ Continued on the attached sheet.

/s/
Complainant's signature

Matthew P. Stevens, Special Agent
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: April 26, 2022

Judge's signature

City and state: Los Angeles, California

Hon. Michael Wilner - U.S. Magistrate Judge
Printed name and title

**AFFIDAVIT**

I, Matthew Stevens, being duly sworn, declare and state as follows:

## I.  INTRODUCTION

1. I am a Special Agent ("SA") with the Coast Guard Investigative Service (CGIS). I have been employed by CGIS since December 2020 upon graduation of the Criminal Investigator Training Program (CITP). CITP was held at the Federal Law Enforcement Training Center (FLETC), Glynco, GA. I am presently assigned to CGIS Resident Agent Office (RAO) Los Angeles/Long Beach (LA/LB), where I am assigned to investigate offenses of the United States Code and the Uniform Code of Military Justice (UCMJ). I have led and assisted in investigations pertaining to environmental crimes, fraud, narcotics, assault, and domestic violence. Through my participation in these investigations, I have debriefed numerous defendants, cooperating sources, and witnesses with personal knowledge regarding the various crimes. Prior to CITP, I served for approximately ten years as an active-duty member of the United States Coast Guard (USCG) conducting federal law enforcement operations and working as an Intelligence Specialist. During my time as a uniformed military service member, I attended narcotics identification trainings and conducted counter narcotics operations. I completed my Bachelor's Degree from the University of North Carolina at Wilmington in 2009 and I earned my Master's Degree from American Military University in 2017.

## II. PURPOSE OF AFFIDAVIT

2.   This affidavit is made in support of a criminal complaint against Nathaniel Willard ("WILLARD") for a violation of Title 18, United Sates Code, Section 113(a)(7), assault resulting in bodily injury to an intimate or dating partner within the maritime and territorial jurisdiction.

3.   The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## III. SUMMARY OF PROBABLE CAUSE

4.   On or about February 13, 2022, as the cruise ship (C/S) CARNIVAL RADIANCE sailed from Ensenada, Mexico and returned to the Port of Long Beach, the vessel's home port, in Long Beach, California, within the Central District of California. WILLARD assaulted his date for the cruise and intimate partner R.F. ("R.F.") on the ship by repeatedly punching, kicking, and strangling R.F.  The assault occurred in WILLARD's cabin #7282 while the vessel was underway on the high seas off the coast of Mexico enroute to the Port of Long Beach.

5.   On February 14, 2022, the morning after the assault, WILLARD was observed exiting his cabin on Carnival Cruise

security cameras disposing of two pillowcases in two separate locations on the ship prior to checking out of the room. C/S CARNIVAL RADIANCE staff later discovered two pillowcases that contained bed linens soiled with blood. On that same morning, WILLARD also directed his date and intimate partner, R.F., to ice her face prior to departing the room.  Victim R.F. disembarked the C/S CARNIVAL RADIANCE masked due to COVID-19 public safety protocols and she wore large sunglasses to hide her injuries.  WILLARD's assault led to R.F.'s need for immediate medical attention, hospitalization for treatment for a broken eye socket and other injuries.  R.F. was treated and admitted at a nearby hospital in Los Angeles County for her injuries which were extensive and ultimately resulted in R.F. suffering a seizure.

## IV. STATUTORY FRAMEWORK

### A. Assault Within Maritime and Territorial Jurisdiction in Violation of 18 U.S.C. Section 113(a)(7)

Special Maritime Jurisdiction Discussion Title 18, United States Code, Section 7(8)

6.  Under Title 18, United States Code, Section 113(b)(1)(A), substantial bodily injury is a defined term, which means bodily injury which involves a temporary but substantial disfigurement.

7.  Under Title 18, United States Code, Section 113(a)(7), an assault resulting in substantial bodily injury to a spouse, intimate, or dating partner within maritime and territorial jurisdiction is a felony with a maximum sentence of five years.

3

8. Special maritime and territorial jurisdiction of the United States is defined under Title 18, United States Code, Section 7(8) which states that to the extent permitted by international law, any foreign vessel during a voyage having a scheduled departure from or arrival in the United States with respect to an offense committed by or against a national of the United States.

9. Here, the offense conduct took place on a round trip voyage from the Port of Long Beach in California and the victim was assaulted twice on February 13, 2022. The first assault was by a pool (hair pulling) in Mexican waters, and the second assault, which resulted in a broken eye socket and temporary substantial facial disfigurement on that same date, took place in WILLARD'S cabin on the vessel on the high seas off the coast of Mexico. R.F., the victim, is a United States citizen and received treatment in the United States. WILLARD, the target of this investigation, is also a United States citizen.

**B.   Coast Guard Has the Authority to Enforce Crimes Occurring On Foreign Flagged Vessels That Are Subject to U.S. Jurisdiction**

10. Pursuant to Title 14, United States Code, Section 522, the Coast Guard is authorized to exercise law enforcement authority against foreign flagged vessels, such as the C/S CARNIVAL RADIANCE which is a Panama flagged vessel owned by a United States based company, Carnival Corporation. The C/S CARNIVAL RADIANCE operated from ports within the United States, including round trip voyages from the Port of Long Beach, California. Pursuant to that authority, the Coast Guard may

4

make inquiries, examinations, inspections, searches, seizures, and arrests upon the high seas and waters over which the United States has jurisdiction, for the prevention, detection, and suppression of violations of laws of the United States, including but not limited to assault.

## V. STATEMENT OF PROBABLE CAUSE

### A. Background of the Investigation

11. Based on my work on this investigation, my communications with other law enforcement agents, my review of surveillance footage and photographic evidence, my participation in witness interviews, and my review of an incident report prepared by Carnival Cruise Ship Security, I have learned the following:

    a. On or about February 25, 2022, the United States Coast Guard was notified of an assault onboard the C/S CARNIVAL RADIANCE, a Panamanian-flagged vessel. At the time of the assault, the C/S CARNIVAL RADIANCE was returning to the Port of Long Beach from Ensenada, Mexico. The ship was scheduled to arrive at the Port of Long Beach at approximately 8:00 a.m. on February 14, 2022. The assault occurred while the ship was underway transiting from Mexican Territorial Waters to the high seas.

    b. During a February 28, 2022, interview, R.F. indicated that she was initially afraid to report the assault and embarrassed by the extent of physical injuries she suffered from repeated blows to her face, resulting in heavy bruising,

swelling, a broken eye socket, hospital admission, and ultimately resulting in a seizure.

        i.    R.F. further stated that she was invited to go on the cruise by WILLARD and she was his date. He booked the tickets and had arranged the trip on his own. WILLARD was R.F.'s intimate partner, and she was looking forward to the weekend.

        ii.    R.F. indicated that the trip became violent when she was assaulted by WILLARD on the afternoon of February 13, 2022, while on the pool deck of the C/S CARNIVAL RADIANCE when WILLARD pulled her by the hair. R.F. stated that she was later assaulted again by WILLARD during the evening of February 13, 2022, in their shared cabin, cabin 7282.

        c.    During her February 28, 2022, interview, R.F. provided me with photographs of WILLARD and herself onboard the C/S CARNIVAL RADIANCE prior to the assault, photographs of her injuries after the assault, and medical records from the treatment she received at a hospital in Torrance, California, after she sought medical treatment upon her return to California.

        i.    One or more of those photographs show R.F. on the pool deck of C/S CARNIVAL RADIANCE at approximately 5:38 p.m. on February 13, 2022, with no noticeable injuries. One or more other photographs show R.F. at approximately 11:04 p.m. onboard C/S CARNIVAL RADIANCE with extensive facial injuries.

6

B.   **WILLARD Assault #1 Pool Deck**

   d.   On February 13, 2022, R.F. and WILLARD spent time off the ship in Ensenada, Mexico visiting bars and shops. WILLARD and R.F. had a verbal altercation, and R.F. returned to C/S CARNIVAL RADIANCE alone.

   e.   That afternoon R.F. was on deck-9 close to the pool. Several people were gathered around the big screen above the pool for a Super Bowl watch party on the big screen. R.F. identified S.G. on the pool deck and the two bought some food and sat together at a table near the pool. R.F. stated that while she sat with S.G. at the table near the pool they observed WILLARD in the area. WILLARD walked by the table where R.F. and S.G. were sitting and forcefully pulled R.F.'s hair. R.F. was shocked at WILLARD's actions.

<u>Witness S.G. Observed Assault #1 - Pool</u>

12.   On April 4, 2022, CGIS SA Paul Buccatt and I interviewed S.G. regarding her C/S CARNIVAL RADIANCE cruise trip in February of 2022. During the interview, S.G. reported the following:

   a.   S.G. had met WILLARD and R.F. while attending high school in Los Angeles, California. S.G. had not maintained any connection with WILLARD or R.F. since graduation, but S.G. recognized them the first day of the cruise.

   b.   On February 13, 2022, S.G. and R.F. were seated at a table together in the pool area of deck-9 onboard C/S CARNIVAL RADIANCE. S.G. later observed WILLARD walk by and pull R.F.'s hair.

**C.   WILLARD Victim R.F. Assault #2 Cabin 7282**

13.   On February 28, 2022, during R.F.'s interview, R.F. stated that she was assaulted a second time on February 13, 2022, while onboard C/S CARNIVAL RADIANCE.  R.F. further indicated the following about the second assault:

    a.   R.F. returned to cabin 7282, the cabin she shared with WILLARD, at approximately 7:00 p.m., and shortly after she arrived in cabin 7282, WILLARD entered the cabin.

    b.   WILLARD was irate and began making accusations that R.F. was interested in another man onboard C/S CARNIVAL RADIANCE.

    c.   WILLARD threw R.F. against the wall, grabbed her by her neck, and began punching her face.

    d.   R.F. screamed and attempted to fight WILLARD off.

    e.   As R.F. ran to the door, WILLARD grabbed her ankle and swung her to the ground.

    f.   WILLARD stomped her ankle while R.F. was on her back.

    g.   WILLARD continued to punch R.F. in the face, kick her while she was on the ground, spit on her, and stomp her waist until she urinated on herself.

    h.   R.F. recalled blacking out and being shaken back up by WILLARD.

    i.   R.F. took a photograph of her face at approximately 11:04 p.m. to determine the extent of her injuries.

   j. WILLARD told R.F. that she needed to ice her face in order to reduce the swelling.

 14. On March 2, 2022, I contacted Carnival Cruise Line. I subsequently received and reviewed Incident Report #CCLRDSEC202200014V ("the Incident Report") on March 7, 2022. On March 11, 2022, I retrieved the ship's Closed Circuit Television (CCTV) footage, and I have reviewed that surveillance footage. From my review of the Incident Report and review of the surveillance footage and the February 28, 2022, interview of R.F., I am informed of the following:

   a. Carnival Cruise Line Ship Security interviewed the C/S CARNIVAL RADIANCE crew who were responsible for servicing the area around cabin 7282.

   b. On March 14, 2022, two C/S CARNIVAL RADIANCE crewmembers retrieved pillowcases with dirty linens from two separate locations on deck 6 and deck 7, including but not limited to, cabin 7282. The linens included bathrobes, bed sheets, and a mattress protector. The crew members indicated that they observed what appeared to be spattered blood on one or more of these items.

   c. The CCTV surveillance footage depicted R.F. transiting throughout the ship between the hours of approximately 3:11 p.m. and 6:52 p.m. on February 13, 2022. During her February 28, 2022, interview, R.F. reported that she spent time at the pool, bar, and casino before she entered her cabin at 6:52 p.m. hours. The Incident Report timeline indicates that there was no activity (ingress or egress) from

9

cabin 7282 until WILLARD departed the cabin on February 14, 2022, at approximately 5:16 a.m.

      d.    The CCTV surveillance footage captured WILLARD making three separate trips from cabin 7282 through various passageways on the ship on February 14, 2022, between 5:16 a.m. and 6:06 a.m.

          i.    The first trip showed WILLARD exiting cabin 7282 with a pillowcase and leaving the pillowcase between the two doors leading to the open deck area on deck-7 forward starboard side at approximately 5:16 a.m. This pillowcase was subsequently retrieved by Housekeeping Staff member D.K. ("D.K.") at approximately 3:33 p.m. D.K. was subsequently interviewed by Assistant Chief Security Officer, Deveanand Singh, on March 3, 2022. D.K. stated that she found the pillowcase behind the door going to the observation deck at deck-7 forward starboard side, and that she brought the pillowcase to the laundry room locker, opened the pillowcase and found a bathrobe, mattress protector and linens soiled with blood stains hidden inside. D.K. photographed the items, put them in a red bag, and disposed of them in the garbage room.

          ii.    The CCTV surveillance footage also recorded WILLARD's second trip out of cabin 7282 at approximately 5:22 a.m. on February 14, 2022. At that time, WILLARD exited cabin 7282 with what appears to be an ice bucket and returned at approximately 5:28 a.m.

          iii.   The CCTV surveillance footage recorded WILLARD's third and final trip from cabin 7282 at approximately

6:02 a.m. on February 14, 2022. At that time, WILLARD was observed carrying a second pillowcase filled with unknown objects. WILLARD left the pillowcase on the port forward side of deck-6 in the hallway near cabin 6220. The pillowcase was retrieved by a Housekeeping Staff member, I.S. ("I.S.") at approximately 6:15 a.m. and placed on the steward trolley. On March 3, 2022, I.S. was interviewed by Assistant Chief Security Officer, Deveanand Singh, and I.S. stated that he checked the pillowcase from the top only and observed a few blood stains. I.S. also stated that he subsequently picked up the pillowcase from the floor and threw it in a blue laundry bag.

15. During her February 28, 2022, interview, R.F. stated that she and WILLARD departed the vessel in Long Beach, California, at approximately 9:06 a.m.

16. The CCTV surveillance footage shows R.F. and WILLARD at approximately 9:21 a.m. hours on February 14, 2022, checking in with United States Customs and Border Protection (CBP). R.F. and WILLARD checked in at podium 3.

    a. CCTV shows the back of R.F. and does not show her face as she de-masks for check in and processing by CBP Officer Stacy Zeljack.

17. March 11, 2022, I interviewed Officer Stacy Zeljack regarding her job and responsibilities at CBP. Officer Zeljack told me that she recalled one unusual instance over the past month of her assignment working between the Long Beach and Los Angeles Cruise Ship Terminals. Officer Zeljack stated that an African American woman came through her line several weeks ago

and was hesitant to de-mask.  Eventually the woman exposed her face, and Officer Zeljack described the individual as having an injured left eye that was swollen.  I replayed the CCTV surveillance footage from February 14, 2022, and Officer Zeljack identified R.F. as the individual with an injured left eye.

    18.  On March 15, 2022, R.F. provided me with official medical records from Providence Little Company of Mary Hospital in Torrance, California, dated February 14, 2022 to February 16, 2022.  I reviewed the records which showed that R.F. was admitted on February 14, 2022, at approximately 12:54 p.m. Pertinent diagnostic data from R.F.'s medical records showed a left side fracture of the lateral orbital wall, subarachnoid bleeding, subdural hemorrhage, abdominal pain from being kicked, and post traumatic seizure following a physical assault.

    19.  R.F. obtained a restraining order for WILLARD after he was observed outside of R.F.'s apartment multiple times between February 17, 2022 and April 6, 2022.  The restraining order was issued by the Los Angeles Superior Court on or about April 6, 2022.  R.F. provided the restraining order to the Los Angeles Sheriff's Office for service on or about April 8, 2022.

### VI.  CONCLUSION

    20.  Based on the foregoing facts, I believe there is probable cause that WILLARD has violated 18 U.S.C. § 113(a)(7),

Assault Resulting in Substantial Bodily Injury to an Intimate or Dating Partner Within Maritime and Territorial Jurisdiction.

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this <u>26th</u> day of
<u>April</u>, 2022.

_____
MICHAEL R. WILNER
UNITED STATES MAGISTRATE JUDGE